UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ROBERT RAIMONDI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SOUTH FLORIDA YACHT | ) |
| SALES, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

Civil Action No.: 04-12638-MLW

## SOUTH FLORIDA YACHT SALES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant South Florida Yacht Sales, Inc. ("SFY") hereby submits its Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint. As set forth below, the Complaint should be dismissed because: (1) this Court lacks personal jurisdiction over SFY; and (2) Plaintiff has failed to state claims for which relief can be granted.

### INTRODUCTION

SFY has no connection to Massachusetts. This dispute arises from a Florida transaction between a Massachusetts resident who reached out to SFY in Florida to purchase a yacht in late 2001. The only connection that Massachusetts has to the transaction at issue is that plaintiff Robert Raimondi ("Raimondi") resides there -- at least part of the year.

In late 2001, Raimondi ordered a yacht from SFY at the Ft. Lauderdale International Boat Show in **Ft. Lauderdale, Florida**. At the boat show in **Florida**, Raimondi and SFY negotiated the terms of the sale, which included the trade in of Raimondi's two yachts. At the boat show in

**Florida**, Raimondi signed a purchase and sale agreement for the new yacht. Raimondi made several payments towards the purchase of the yacht to SFY in **Florida**. Before the closing, SFY informed Raimondi that the value of the trade in yachts were below the trade-in allowance credited towards the new yacht, requiring Raimondi to pay more money out of pocket for the yacht. Raimondi wired the outstanding balance to SFY's bank in **Florida**. At the closing in **New Jersey**, Raimondi and SFY modified the written purchase and sale agreement reflecting the final balance that Raimondi owed. The agreement did not contemplate or require any performance by SFY or Raimondi in Massachusetts.

Now, almost three years later, Raimondi claims he paid more than the contract price for the yacht. He has sued SFY in Massachusetts for: (1) recovery of overpayment; (2) money had and received; and (3) violation of the consumer protection law (Mass. Gen. L. c. 93A).

Notably, Raimondi has failed to allege **any** statutory or factual basis for the Court's exercise of personal jurisdiction over SFY, leaving SFY to guess which subsection of the Massachusetts long-arm statute he contends applies to SFY. In addition, with contacts as bare as these, the Massachusetts long-arm statute does not confer personal jurisdiction over SFY, and the Court's exercise of personal jurisdiction would violate the Due Process Clause of the U.S. Constitution.

Further, Raimondi does not allege any facts showing that SFY's conduct in the transaction was unfair or fraudulent. By contrast, Raimondi alleges that he paid more than the contract price for the yacht and that SFY has not returned the overpayment. Compl. ¶¶15, 16, 19. Then in conclusory fashion, Raimondi alleges that SFY "is using unfair and deceptive practices, including denial, that there was an overpayment, [sic] refusing to return the overpayment." Compl. ¶25. The allegations on their face show that Raimondi describes a

simple commercial dispute akin to a breach of contract and not a violation of the consumer protection law. For this reason, Raimondi's claim for a violation of Mass. Gen. L. c. 93A should be dismissed for failing to state a claim for which relief can be granted.

## STATEMENT OF RELEVANT FACTS

### South Florida Yachts

SFY is a Florida corporation with its principal place of business in Miami, Florida. Declaration of Ralph Navarro ("Navarro Decl.") ¶2.[1] SFY has offices in the following Florida cities: Miami and Pompano Beach. SFY also has an office in Santo Domingo. Navarro Decl. ¶3. SFY does not have any offices, agents, sales representatives, inventory, or real property located in Massachusetts. Navarro Decl. ¶3.

SFY is in the business of selling yachts. SFY is a dealer of yachts manufactured by Ocean Yachts, Inc. ("Ocean Yachts") for the territory between Deerfield Beach, Florida and Key West, Florida. Navarro Decl. ¶4. Ocean Yachts is located in New Jersey. Declaration of Thomas Troccoli, Jr. ("Troccoli Decl.") ¶3.

SFY does not engage in any activities to serve or provide services to the Massachusetts market. Navarro Decl. ¶5. SFY does not solicit business in Massachusetts through sales representatives or agents. Navarro Decl. ¶6.

SFY does not target the Massachusetts market for its marketing. Navarro Decl. ¶6. SFY does not advertise in Massachusetts. Navarro Decl. ¶6.

SFY maintains a website at "www.floridayachtsinternational.com." The website provides information about SFY and its products. Yachts cannot be purchased through the website. Navarro Decl. ¶7. A copy of the various pages printed from the website are attached to the Navarro Declaration as Exhibit B.

---

[1] The declarations of Ralph Navarro and Thomas Troccoli, Jr., have been filed concurrently with this memorandum.

### Raimondi

Raimondi is an individual alleged to reside in Massachusetts. Compl. ¶1.[2] Prior to November 2001, Raimondi owned two yachts: (1) a 1999 48' yacht manufactured by Ocean Yachts (the "48' Yacht"); and (2) a 1997 40' yacht manufactured by Ocean Yachts (the "40' Yacht"). Navarro Decl. ¶10; Troccoli Decl. ¶4. Raimondi told an SFY salesman, Thomas Troccoli, Jr. ("Troccoli") that he docked one of the yachts in Florida. Troccoli Decl. ¶4. Prior to purchasing a yacht from SFY, Raimondi sought assistance from SFY with warranty claims against Ocean Yachts. Troccoli Decl. ¶3.

### Raimondi Approached SFY in Florida

In late 2001, Raimondi reached out to SFY in Florida to purchase a yacht. SFY never solicited business from Raimondi in Massachusetts. In fact, Troccoli told Raimondi to purchase a yacht from a dealer located in Massachusetts. Troccoli Decl. ¶6.

In late 2001, Raimondi attended the Ft. Lauderdale International Boat Show, which was held in Ft. Lauderdale, Florida (the "Boat Show"). SFY participated in Ocean Yachts' exhibit at the Boat Show. Raimondi visited the Ocean Yachts exhibit and decided he wanted to purchase a 2002 Ocean 56' Super Sport yacht (the "56' Super Sport") from SFY. Troccoli Decl. ¶¶6&7; Navarro Decl. ¶8. At the Boat Show in Florida, Raimondi signed a contract to purchase the 56' Super Sport from SFY (the "Contract"). A copy of the Contract is attached to the Declaration of Ralph Navarro, as Ex. A. The yacht was to be built by Ocean Yachts in New Jersey. Navarro Decl. ¶9.

The Contract provided that the closing and the delivery of the new 56' Super Sport would take place in New Jersey in April, 2002. *See* Contract; Navarro Decl. ¶9. The Contract also

---

[2] Raimondi's allegations set forth herein are accepted as true solely to establish the deficiencies in his pleading and should not be construed as a waiver by SFY to contest any and all factual allegations set forth in Raimondi's Complaint.

provided that Raimondi would trade in his 48' and 40' Yachts for a credit of up to $800,000 towards the purchase price of the 56' Super Sport. *See* Contract; Navarro Decl. ¶10. This trade-in allowance was subject to the actual condition of the yachts and the resulting market value of the yachts. Navarro Decl. ¶10. Further, the Contract provided that there was no sales tax. *See* Contract.

The decision to set the trade-in allowance at $800,000 was based on Raimondi's representations about the condition of his two yachts at the Boat Show and not on a survey. Navarro Decl. ¶10. In addition, the parties agreed that SFY would satisfy any liens on the 48' and 40' Yachts and that Raimondi would repay SFY. Navarro Decl. ¶10.

Between the closing and the signing of the Contract, representatives of SFY and Raimondi communicated by telephone and fax regarding Ocean Yachts' progress in building the 56' Super Sport and about the trade ins. Navarro Decl. ¶11; Troccoli Decl. ¶9.

Between the execution of the Contract and the closing, Raimondi made installment payments to SFY in Florida towards his outstanding balance for the 56' Super Sport and towards SFY's satisfaction of the liens on the 48' and 40' Yachts which Raimondi traded in. Raimondi wired an $80,000 deposit into SFY's bank account in Miami, Florida. Raimondi sent five checks to SFY in Florida, and SFY deposited these checks into its bank account in Miami, Florida. Navarro Decl. ¶12.

Prior to the closing, SFY informed Raimondi that the trade-ins only covered a portion of the full $800,000 trade-in allowance, requiring Raimondi to pay an additional $100,000 out of pocket for the 56' Super Sport. Troccoli Decl. ¶10; Navarro Decl. ¶13. This simply meant Raimondi owed a larger amount towards the unpaid balance than was originally calculated. The

actual vessel price did not change.  Navarro Decl. ¶13; Troccoli ¶10.  Raimondi wired the final balance to SFY's bank account in Florida.  Navarro Decl. ¶13.

The closing on the 56' Super Sport took place in New Jersey on or about April 24, 2002, where the yacht was delivered to Raimondi.  Troccoli traveled from Florida to New Jersey for the closing.  Raimondi and his wife also attended the closing in New Jersey.  Troccoli Decl. ¶11.

The Contract was revised with a handwritten note memorializing the final sum Raimondi owed for the purchase of the yacht.  Troccoli Decl. ¶12.  The note on the Contract provided: "Amended Sales Price Due to Trades $380,000.00."  The revised Contract is attached to Troccoli's Declaration as Exhibit A.

The 56' Super Sport was delivered to Raimondi in New Jersey.  Troccoli Decl. ¶11. Sometime between the execution of the Contract and the closing, Raimondi had indicated that he intended to dock the 56' Super Sport in Florida and in Massachusetts.  Troccoli Decl. ¶13.

Within one year after the closing, Raimondi contacted Troccoli for assistance with some warranty issues with Ocean Yachts in New Jersey.  Troccoli Decl. ¶14.  The Contract did not require SFY to assist Raimondi with warranty issues.  Navarro Decl. ¶15.

Then, almost two years after the closing, Raimondi contacted SFY in Florida claiming that he paid approximately $100,000 more than the contract price for the 56' Super Sport. Navarro Decl. ¶16.  From Florida, SFY communicated with Raimondi's accountant and attorney in Massachusetts about Raimondi's claim.  Navarro Decl. ¶16.  SFY denied the overpayment claim.  Raimondi filed this lawsuit in Massachusetts instead of Florida, despite the fact that SFY has no contacts with Massachusetts.

## ARGUMENT

### I.    The Court Lacks Personal Jurisdiction Over SFY

Before subjecting a nonresident defendant to a lawsuit in a foreign jurisdiction, a federal court sitting in diversity must find that the non-resident defendant had sufficient contacts with the forum to meet the requirements of the state's long-arm statute and the Due Process Clause of the Fourteenth Amendment. *See Lyle Richards Int'l v. Ashworth, Inc.*, 132 F.3d. 111, 112 (1st Cir. 1997); *Sawtelle v. Farrell*, 70 F.3d 1381, 1387 (1st Cir. 1995). Remarkably, Raimondi has failed to allege any legal or factual basis for the Court's assertion of jurisdiction over SFY.

#### A.    This Court Lacks General Personal Jurisdiction Over SFY

General jurisdiction over a non-resident defendant is only supported where the defendant has had continuous and systematic contacts with the forum state. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 413-418 (1984); *Callahan v. Harvest Board Int'l, Inc.*, 138 F.Supp.2d 147 (D. Mass. 2001); *Droukas v. Divers Training Academy, Inc.*, 376 N.E.2d 548, 551 n.5 (Mass. 1978). The record clearly shows that SFY has not had continuous and systematic contacts with the state of Massachusetts. Accordingly, this Court cannot assert general jurisdiction over SFY.

#### B.    Personal Jurisdiction Over SFY Does Not Comport with Massachusetts' Long-Arm Statute.

Raimondi failed to allege which section of Massachusetts's long-arm statute (Mass. Gen. L. c. 233A §3) supports this Court's exercise of personal jurisdiction over SFY. In addition, Raimondi failed to allege any facts supporting personal jurisdiction over SFY, leaving SFY to guess which provision of the long-arm statute he is traveling under.

At bottom, SFY has no contacts with Massachusetts sufficient to make any provision of the Massachusetts' long-arm statute applicable to SFY. Specifically, the long-arm statute provides:

A court may exercise personal jurisdiction over a Person who acts directly or by an agent, as to a cause of action in law or equity **arising from** the person's

(a)    transacting any business in this commonwealth;

(b)    contracting to supply services or things in this commonwealth;

(c)    causing tortious injury by an act or omission in this commonwealth;

(d)    causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth;

(e)    having an interest in, using or possessing real property in this commonwealth;

(f)    contracting to insure any person, property or risk located within this commonwealth at the time of contracting;

(g)    maintaining a domicile in this commonwealth while a party to a personal or marital relationship out of which arises a claim for divorce, alimony, property settlement, parentage of a child, child support or child custody; or the commission of any act giving rise to such a claim; or

(h)    having been subject to the exercise of personal jurisdiction of a court of the commonwealth which has resulted in an order of alimony, custody, child support or property settlement, notwithstanding the subsequent departure of one of the original parties from the commonwealth, if the action involves modification of such order or orders and the moving, party resides in the commonwealth, or if the action involves enforcement of such order notwithstanding the domicile of the moving party.

Mass. Gen. L. c. 233A §3 (emphasis added). As this case does not deal with an alleged tortious injury, torts, real property, a contract of insurance, divorce, alimony, custody, child support,

property settlement, subsections "c" through "h" do not apply.[3]  The remaining provisions of the long-arm statute will be addressed below.

### 1.    SFY Did Not Transact Business In Massachusetts

Section 3(a) of Massachusetts' long-arm statute requires that: (1) the non-resident defendant have transacted business in Massachusetts; and (2) the claim **arose** from the transaction of business in that forum.  Mass. Gen. L. c. 223(A), §3(a).  Section 3(a) is designed to identify **deliberate** contacts with the forum by the non-resident defendant.  *Lyle*, 132 F.3d at 113 (explaining that the Massachusetts long-arm statute does not confer personal jurisdiction over a non-resident defendant where the defendant's contacts with Massachusetts were extraneous to the formation of the parties' contract and incidental to the parties contractual obligations).  An important factor in the "transacting business" test is whether the non-resident defendant "initiated or solicited" the business transaction at issue in Massachusetts.  *Id.* at 113; *see also Droukas v. Divers Academy, Inc.*, 376 N.E.2d 548, 551 (Mass. 1978) (holding that the defendant did not transact business in Massachusetts where the defendant's only contacts were "the placement of an advertisement in a publication distributed in the Commonwealth, the receipt in Florida of a telephone call from the plaintiff in Massachusetts in regard to the purchase of the two engines [advertised by the defendant in the publication], the sending of correspondence to the plaintiff confirming the sale, and the shipment of the engines "collect" to the plaintiff in Massachusetts").

---

[3] Raimondi does not claim a tortious injury.  Although Raimondi has sued for violation of Massachusetts' consumer protection law (Count III), he has failed to state a viable cause of action.  *See supra* Part II.  A court cannot base its exercise of jurisdiction on claims that are not viable.  *Callahan v. Harvest Board Int'l, Inc.*, 138 F.Supp.2d 147, 165 (D. Mass. 2001).  Furthermore, a Chapter 93A violation is not a tort.  *See Grand Pacific Finance Corp. v. Brauer*, 783 N.E.2d 859, 862. 9 (Mass. App. Ct. 2003).  Notwithstanding, even if a purported consumer protection law claim were considered a tort, the long-arm statute would not confer personal jurisdiction.  The alleged harm, if any, arose out of SFY's decision to not return the alleged overpayment.  Therefore, the injury, if any, arose in Florida where the purported decision not to return the alleged overpayment was made.  *Callahan*, 138 F.Supp.2d at 164 (legal injury in the tort of conversion is deemed to occur when the actual conversion took place).

In *Lyle*, the First Circuit held that the non-resident defendant had <u>incidental</u> contacts with Massachusetts that did not support the exercise of personal jurisdiction. *See id.* at 113-114. The defendant, a resident of California, contracted with a Massachusetts corporation that would serve as the defendant's purchasing agent for footwear manufactured in Asia. *See id.* at 112. The defendant never advertised or solicited for a purchasing agent in Massachusetts. Instead, the plaintiff made "overtures" to the defendant in California. The plaintiff drafted and signed the contract in Massachusetts and mailed it to the defendant in California where the defendant signed it. *See id.* The contract did not require either the defendant or the plaintiff to perform any contractual obligations in Massachusetts. *See id.* Notwithstanding, the defendant forwarded purchase orders to the plaintiff in Massachusetts, which the plaintiff then transmitted to factories in Asia. The parties communicated a few times each week from California and Massachusetts about ongoing contract performance. *See id.* at 112. In addition, a representative of the defendant traveled to Massachusetts to attend three trade shows with an employee of the plaintiff, and the plaintiff designed footwear and purchased materials for the footwear from its office in Massachusetts. *See id.* at 112-114. The lawsuit ensued after the defendant terminated the agreement by letter sent from California to Massachusetts. *See id.* at 112. The court dismissed the action for lack of personal jurisdiction because the defendant's contacts with Massachusetts were too incidental to fit within the reach of the long-arm statute. *See id.* at 113-114.

Similar to the facts of *Lyle*, all activities leading up to the formation of the Contract took place in Florida. Raimondi approached SFY in Florida in connection with purchasing a boat. SFY did not target Raimondi. The Contract was entered into in Florida and not in Massachusetts. Raimondi made installment payments towards the purchase of the yacht to SFY

in Florida. The parties discussed the final amounts Raimondi owed SFY prior to closing, and Raimondi wired the money to SFY in Florida. Then, at the closing in New Jersey, the parties modified the written Contract, reflecting the actual outstanding balance Raimondi had owed. Neither SFY nor Raimondi performed or were required to perform any contractual obligations in Massachusetts pursuant to the Contract.

Although SFY assisted Raimondi with warranty claims against Ocean Yachts, SFY was not contractually obligated to do this, and this was incidental to the formation of the Contract. Therefore, this assistance is insufficient to support the assertion of personal jurisdiction over SFY. *See Lyle,* 132 F.3d at 113.

Moreover, SFY's contacts with Raimondi are insufficient to pull SFY within the reach of the Massachusetts long-arm statute. *See Aub v. Technicolor Entertainment Servs.,* 224 F.Supp.2d 371, 374 (D. Mass. 2002) ("The fact that there were long-distance communications between the parties by mail and telephone is not enough to justify the conclusion that Technicolor transacted business in Massachusetts."). The only reason SFY ever had any contacts with Massachusetts was because Raimondi who lived there (at least part of the year) decided to purchase a yacht from SFY, a South Florida yacht dealer.

In *Aub,* the plaintiff and defendant negotiated the plaintiff's sale of on-screen advertising in movie theaters for the defendants. *See id.* at 373. The plaintiff and defendant were introduced while the plaintiff was a California resident. *See id.* at 372. About one month later, the plaintiff moved to Massachusetts while the parties were negotiating. *See id.* The negotiations were in person in California, and over the phone and through correspondence while plaintiff was in Massachusetts. *See id.* The defendant sent payments to the plaintiff in Massachusetts for plaintiff's services. *See id.* After the plaintiff secured a deal for the defendant, the parties were

unable to agree on a bonus plaintiff claimed she was owed. The defendant eventually sent

plaintiff a bonus check in the amount it thought was acceptable to the plaintiff in Massachusetts,

and the lawsuit ensued. *See id.* The court held that the long-arm statute did not confer

jurisdiction under the transaction of business prong, notwithstanding the bi-coastal phone calls

and correspondence between the parties. The court noted that a seller who **seeks out** purchasers

in Massachusetts is more likely to be found to have engaged in the transaction of business in

Massachusetts for purposes of the long-arm statute because of the deliberateness of that contact.

*See id* at 373-374. In dismissing the plaintiff's action, the court explained:

> The business relationship grew out of the contact originally made in California
> when Aub was a resident of that state. None of Technicolor's executives ever
> traveled to Massachusetts, and all of Aub's face-to-face meetings with
> Technicolor executives took place elsewhere. The only reason Technicolor ever
> had any contacts with Massachusetts was because Aub chose to move her
> consulting business from California to Massachusetts.
> . . .
> The fact that there were long-distance communications between the parties by
> mail and telephone is not enough to justify the conclusion that Technicolor
> transacted business in Massachusetts.

*See id.* at 374.

At bottom, SFY's minimal contacts with Massachusetts cannot be deemed to be

transacting business in Massachusetts. Because SFY's contacts with Massachusetts do not

qualify as transacting business, Raimondi's claims cannot be deemed to have **arisen from** SFY's

transaction of business in Massachusetts. The "arising from" clause is construed by applying a

"but for" causation test: "Did the defendant's contacts with the Commonwealth constitute the

first step in a train of events that resul[ed] in the personal injury." *Lyle*, 132 F.3d at 114 (internal

citations omitted). Because SFY's contacts with Massachusetts were merely an incidental by-

product of a buyer (who resides, at least part time, in Massachusetts) eager to purchase a yacht

from a seller in Florida, SFY's contacts with Massachusetts cannot be deemed to be the "but for" cause of an alleged overpayment of money. *Lyle*, 132 F.3d at 114.

In sum, Raimondi fails to establish that this Court can exercise specific personal jurisdiction over SFY pursuant to the "transaction of business prong" of Massachusetts long-arm statute.

### 2    SFY Did Not Supply Goods or Services to Raimondi in Massachusetts

Subsection "b" of the long-arm statute does not confer jurisdiction over SFY because SFY did not contract to supply any services or things in Massachusetts. *See Droukas v. Divers Training Academy, Inc.*, 376 N.E.2d 548, 553 (Mass. App. Ct. 1978) (holding that the court lacked personal jurisdiction over the defendant seller of marine engines under "contracting to supply services or things in this commonwealth" prong of the long-arm statute because the defendant did not agree to bear the responsibility for delivering the engines to the plaintiff in Massachusetts).

The Contract specifically provided that delivery of the 56' Super Sport would be made in New Jersey. SFY did not have the contractual responsibility for delivering the 56' Super Sport to Raimondi in Massachusetts and did not assume the responsibility of shipping the yacht to Raimondi.

### B.    The Court's Exercise of Personal Jurisdiction Over SFY Would Violate Due Process

A court can only exercise personal jurisdiction over a non-resident defendant if that defendant has sufficient minimum contacts with the forum. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980); *Sawtelle*, 70 F.3d at 1388. The First Circuit employs a three-part test in determining whether the non-resident defendant has such sufficient minimum contacts. *Sawtelle*, 70 F.3d at 1388. The test is:

First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities [Relatedness].

Second, the defendant's instate contacts must represent a purposeful availment of the privileges of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable [Purposeful Availment].

Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable [Gestalt Factors].

*Sawtelle*, 70 F.3d at 1389 (emphasis added).

### 1.    Raimondi's Claims Did Not Arise Out of SFY's Attenuated Contacts With Massachusetts

The first consideration in the due process test is whether the plaintiff's claim arises out of or relates to the defendant's activities in the forum. *Sawtelle*, 70 F.3d at 1389. The relatedness requirement of the Due Process analysis is only met if the plaintiff's claim **directly** arises out of the defendant's specific contacts with the forum state. *Sawtelle*, 70 F.3d at 1389. The relatedness requirement is not met just because a cause of action arose out of a general relationship between the parties when the plaintiff is located in Massachusetts. *See id.* There must be a causal nexus between the contacts and the claims. *See Cambridge Literary Prop. v. Porzellanfabrik*, 295 F.3d 59, 64-65 (1st Cir. 2002). The elements of the cause of action are relevant to determining whether the defendant's contacts with the forum were instrumental in the formation of the contract or its breach. *See Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 289 (1st Cir. 1999).

The Contract was entered into in Florida. The formation of the Contract had nothing to do with Massachusetts. In addition, Raimondi made payments to SFY in Florida. Since Raimondi alleges that SFY improperly retained an alleged payment of approximately $100,000 for the purchase of the 56' Super Sport which did not belong to SFY, Raimondi must be alleging

that SFY had no contractual right to retain those funds. Thus, any alleged breach occurred in Florida. A contract is breached where the promisor fails to perform. *See Phillips*, 196 F.3d at 291. Further, SFY's accounting regarding the purchase and sale of the 56' Super Sport was conducted by SFY in Florida. Therefore, any alleged mistake in accounting happened in Florida, as did any purportedly flawed decision requiring Raimondi to pay more than the contract price for the yacht. *See id.* Raimondi does not and cannot allege that SFY made any misrepresentations on which Raimondi detrimentally relied.

At bottom, Raimondi cannot establish that SFY's incidental contacts with Massachusetts in connection are related to his claims.

### 2.    **Purposeful Availment**

The purposeful availment test requires the analysis of whether SFY purposefully availed itself of the privilege of conducting activities in Massachusetts, thereby invoking the benefits and protections of the laws of Massachusetts and making their involuntary presence before the state's courts foreseeable. *See Phillips*, 196 F.3d at 292. The purposeful availment requirement is designed to assure that personal jurisdiction is not premised on random, isolated or fortuitous contacts with the forum state. *Sawtelle*, 70 F.3d at 1391. The court must look at "voluntariness and foreseeability." *See id.*

As concerns voluntariness, SFY's contacts with Massachusetts were not voluntarily. Raimondi reached out to SFY to purchase a yacht. Accordingly, there is no voluntariness permitting the exercise of personal jurisdiction over SFY. *See id.* ("Gravely doubtful that defendant attorneys purposefully availed themselves of the benefits and protections of New Hampshire's law by providing legal services outside the state); *Phillips*, 196 F.3d at 289 (no purposeful availment where defendant's contacts with New Hampshire consisted of payments

made to a school located in New Hampshire pursuant to a trust agreement). The *Phillips* court stated: "[W]ithout evidence that the defendant actually reached out to the plaintiff's state of residence to *create* a relationship – say, by solicitation – the mere fact that the defendant willingly entered into a tendered relationship does not carry the day." *Id.* (internal citations omitted and emphasis in original).

Neither can Raimondi satisfy the foreseeability prong of purposeful availment. The consideration for foreseeability is whether SFY benefited from its contacts with Massachusetts in a way that made jurisdiction foreseeable. *See Phillips*, 196 F.3d at 292. SFY sold a yacht to an alleged resident of Massachusetts because Raimondi reached out to SFY in Florida. The sale did not flow from SFY's contacts with Massachusetts. *See id.* Accordingly, SFY could not have reasonably foreseen that it would be haled into court in Massachusetts in connection with Raimondi transaction. Therefore, there is no purposeful availment.

### 3.    Reasonableness -- Gestalt Factors

Because Raimondi has not and cannot demonstrate that SFY had sufficient minimum contacts with Massachusetts that are related to his claims and that SFY purposefully availed itself of the benefits and protections of the laws in Massachusetts, there is no need to reach the reasonableness analysis. *See Sawtelle*, 70 F.3d at 1394 (explaining that a failure to satisfy the first two elements of the due process analysis, namely relatedness and purposeful availment, eliminates the need to even reach reasonableness). However, even if SFY were able to establish such minimum contacts, the exercise of jurisdiction over SFY would be unreasonable.

Reasonableness is evaluated through what is known as the "Gestalt Factors," namely: (1) the defendant's burden of appearing in court in Massachusetts; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief;

(4) the judicial system's interest in obtaining the most cost effective resolution of the controversy; and (5) the common interests of all of the sovereigns in promoting substantive social policies. *Sawtelle*, 70 F.3d at 1394. The gestalt factors are not ends in themselves, they are a means to assist the court in achieving substantial justice. *Callahan*, 138 F.Supp.2d at 162.

**Burden of Appearance**. The comparative burden of SFY litigating in Massachusetts versus Raimondi litigating in Florida is greater. Raimondi spends time in Florida. He has docked a yacht in Florida. By contrast, as demonstrated above, SFY has insufficient contact with Massachusetts.

**Forum State's Adjudicatory Interest**    Massachusetts has no special interest in adjudicating this dispute. The most effective resolution would take place in Florida where the evidence and witnesses are located. Accordingly, this factor favors SFY, as well.

**Plaintiff's Interest In Obtaining Convenient Relief.** The First Circuit recognizes that a plaintiff's choice of forum must be accorded some deference. *See Sawtelle*, 70 F.3d at 1395. However, Massachusetts is not the most convenient forum for this lawsuit. The majority of the witnesses are located outside of Massachusetts. All of SFY's employees who assisted with the transaction are located in Florida. Further, any witnesses at the closing at Ocean Yachts plant are located in New Jersey. Raimondi will have to travel to Florida for the depositions of all SFY-related witnesses.

**Administration of Justice and the Common Interest of All Sovereigns.** The administration of justice and the common interests weigh in favor of SFY because these factors are best served by adjudicating disputes in the forum where the alleged activity occurred – in

Florida.[4]  Furthermore, this case does not involve substantial social policies of interest to Massachusetts.  Raimondi has failed to state a claim for violation of Massachusetts' consumer protection law, *see supra* Part II.  At most, he has alleged a claim for money had and received that purportedly arose in Florida.

Accordingly, the gestalt factors weigh in favor of SFY demonstrating that this Court's personal jurisdiction over SFY is not reasonable.  As Raimondi has not alleged and cannot establish that SFY has sufficient minimum contacts with this forum, the exercise of personal jurisdiction over SFY will violate due process.

**II.    Raimondi Has Failed to State Claims For Which Relief Can Be Granted**

**A.    Count I For Violation of the Consumer Protection Law Is Fatally Flawed**

Raimondi has failed to state a claim for violation of Chapter 93A.  Raimondi's allegations are devoid of ultimate facts showing that SFY participated in any unfair or deceptive conduct.  At most, SFY has alleged (but cannot establish) a claim for money had and received. The law is well established that a claim for nonpayment of a debt or a breach of contract does not constitute a Chapter 93A violation.  *See Callahan,* 138 F.Supp.2d at 166.  To rise to the level of a consumer protection law claim, Raimondi would have to allege facts of an "extortionate quality that gives it the rancid flavor of unfairness."  *Id.*  This Raimondi has not and cannot do.  Further, Raimondi does not allege an injury above and beyond a purported injury arising out of SFY's purported nonpayment of Raimondi's purported overpayment.

In addition, Raimondi's Chapter 93A claim must fail because it does not involve transactions and actions that "occurred primarily and substantially within the Commonwealth." Mass. Gen. L. c. 93A §11 ("No action shall be brought or maintained under this section unless

---

[4]  In addition, Florida law is the law to be applied to any dispute between the parties because it has the most significant relationship to the transactions at issue.  *See Bushkin Assoc., Inc. v. Raytheon Co.,* 473 N.E.2d 662 (Mass. 1985).

the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth."). As demonstrated above. Massachusetts is in no way connected to Raimondi's claims and cannot be said to have occurred primarily and substantially in Massachusetts. The Contract was entered into in Florida. All payments were made in Florida, and, as alleged, any purported injury arose in Florida where SFY allegedly denied an overpayment and where SFY made the purported decision not to return the purported overpayment. *See Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*, 781 N.E.2d 787, 798-799 (Mass. 2003) (holding that there was no Chapter 93A claim because the alleged transaction did not occur primarily and substantially in Massachusetts and explaining that the analysis should not be based on any particular list of factors but instead on the facts of each case).

**B.    Counts I and II are Also Flawed**

In Count I, Raimondi seeks relief for a purported cause of action entitled "Recovery of Overpayment."   There is no recognized cause of action for "Recovery of Overpayment." Therefore, Count I for "Recovery of Overpayment" should be dismissed.  In addition, to the extent Raimondi was trying to state a claim for relief based on the recovery of a purported overpayment, Count I is duplicative of Count II for "Money Had and Received." For this reason too, Count I should be dismissed.

Count II is defective because, as framed, Raimondi failed to base the claim on any ultimate facts.  Count II fails to incorporate by reference the preceding allegations setting forth

the alleged the background facts. A claim based on pure conclusion and speculation and not on any ultimate facts is flawed as a matter of law and should be dismissed.[5]

## CONCLUSION

Based on the foregoing, this Court should dismiss Raimondi's Complaint for lack of jurisdiction. In addition, Raimondi's claims for "Violation of Consumer Protection Law" and "Recovery of Overpayment" are fatally flawed and should be dismissed with prejudice. Further, the Court should award SFY its costs and expenses, including attorneys' fees, incurred in connection with preparing and filing this Motion to Dismiss.

Respectfully submitted,

Defendant,
SOUTH FLORIDA YACHT SALES, INC.

By its attorneys,

Christopher R. O'Hara (BBO #548611)
Zoe Butler-Stark (BBO #658985)
TODD & WELD LLP
28 State Street, 31st Floor
Boston, MA 02109
Telephone: (617) 720-2626

Of Counsel:

Paul A. Shelowitz, Esq.
Julie E. Nevins, Esq.
AKERMAN SENTERFITT
One Southeast Third Avenue, 28th Floor
Miami, FL 33131-1714
Telephone: (305) 374-5600
Fax: (305) 374-5095

---

[5] On a motion to dismiss, conclusory allegations and unwarranted factual deductions cannot be accepted as true, and the court is not bound to accept legal conclusions framed as factual allegations. *See Omni-Wave Electronics Corp. v. Marshall Industries*, 127 F.R.D. 644 (D. Mass. 1989).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of March, 2005, I caused a true copy of the foregoing to be serve by facsimile and U.S. Mail upon counsel for the plaintiff in this action, Stuart T. Schrier, Esq., SHRIER & BALIN, P.C., 1011 Dorchester Avenue, Boston, MA 02125.

Zoe Butler-Stark