UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
CLERK'S OFFICE

2005 MAR -8 P 1:31

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |
|---|---|
| ROBERT RAIMONDI, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SOUTH FLORIDA YACHT )<br>SALES, INC., )<br>)<br>Defendant. )<br>) | Civil Action No.: 04-12638-MLW |

## DECLARATION OF RALPH NAVARRO[1]

I, RALPH NAVARRO, declare as follows:

1. I am President and Director of South Florida Yacht Sales, Inc. ("SFY"), and I have personal knowledge of the matters set forth in this declaration.

2. SFY is a Florida corporation that was created in 2001.

3. SFY's principal address is 2250 South Bayshore Drive, Miami, Florida 33133. SFY has offices in Miami and Pompano Beach, Florida. SFY also has an office in Santo Domingo. SFY does not have any offices, agents, sales representatives, inventory, or real property located in Massachusetts.

4. SFY is in the business of selling yachts. SFY sells yachts manufactured by Ocean Yachts, Inc. ("Ocean Yachts") for the territory between Deerfield Beach and Key West, Florida.

5. SFY does not engage in any activities to serve or provide services to the Massachusetts market.

---

[1] This declaration is being provided pursuant to 28 U.S.C. §1746, which authorizes an unsworn declaration as a statutory substitute for an affidavit.

{M2223474;2}

Civil Action No.: 04-12638-MLW

6. SFY does not solicit business in Massachusetts. SFY does not direct its marketing to Massachusetts. SFY does not advertise in Massachusetts.

7. SFY maintains a website at "www.floridayachtsinternational.com." The website provides information about SFY and its products. Yachts cannot be purchased through the website. A copy of the various pages printed from the website are attached hereto as Exhibit **A**.

8. In late 2001, SFY participated in an Ocean Yachts exhibit at the Ft. Lauderdale International Boat Show, which was held in Ft. Lauderdale, Florida (the "Boat Show"). I worked the show along with an SFY salesman named Thomas Troccoli ("Troccoli"). Plaintiff Robert Raimondi personally attended the boat and ordered a 2002 Ocean 56' Super Sport yacht manufactured by Ocean Yachts (the "56' Super Sport") from SFY. At the Boat Show, Raimondi signed a contract to purchase the 56' Super Sport from SFY (the "Contract"). A copy of the Contract is attached hereto as Exhibit **B**.

9. The 56' Super Sport was to be built by Ocean Yachts at its factory in New Jersey. The Contract provided that the closing and the delivery of the new 56' Super Sport would take place at Ocean Yachts factory in New Jersey in April, 2002.

10. The base price for the yacht was $1,244,900. The Contract also provided that Raimondi would trade in two yachts for a credit of up to $800,000 towards the purchase price of the 56' Super Sport. Raimondi's two trade-in yachts were: (1) a 1999 48' yacht manufactured by Ocean Yachts; and (2) a 1997 40' yacht manufactured by Ocean Yachts. This trade-in allowance was subject to the actual condition of the yachts (which would determined through survey) and the resulting market value of the yachts. The decision to set the trade-in allowance at $800,000 was based on Raimondi's representations about the condition of his two yachts. In addition, the

parties agreed that SFY would satisfy any liens on Raimondi's two trade-in yachts and that Raimondi would repay SFY.

11. Between the closing and the signing of the Contract, representatives of SFY and Raimondi communicated by telephone and fax regarding Ocean Yachts' progress in building the 56' Super Sport and about the trading in of his two yachts.

12. Before the closing, Raimondi made payments to SFY for the 56' Super Sport and to repay SFY for satisfying the liens on Raimondi's trade-in yachts. Raimondi wired an $80,000 deposit into SFY's bank account in Miami, Florida. Raimondi sent five checks to SFY in Florida, which totaled $572,281.96. SFY deposited these checks into its bank account in Miami, Florida.

13. Prior to the closing, SFY informed Raimondi that the trade-ins only covered a portion of the full $800,000 trade-in allowance, requiring Raimondi to pay an additional $100,000 out of pocket for the 56' Super Sport. This simply meant Raimondi owed a larger amount towards the unpaid balance than was originally calculated. The actual vessel price did not change. Raimondi wired the final balance he owed to SFY's bank account in Florida.

14. The closing on the 56' Super Sport took place in New Jersey on or about April 24, 2002. Troccoli attended the closing in New Jersey.

15. Within one year after the closing, Raimondi contacted Troccoli in Florida to assist him with some warranty issues with Ocean Yachts in New Jersey. The Contract did not require SFY to assist Raimondi with his warranty issues

16. Almost two years after the closing, Raimondi contacted SFY in Florida claiming that he paid approximately $100,000 more than the contract price for the 56' Super Sport. From

Florida, SFY communicated with Raimondi's accountant and attorney in Massachusetts about Raimondi's claim.

17. Approximately five or six SFY employees assisted with the 56' Super Sport transaction.

18. All administrative work and accounting for the Raimondi transaction was done by SFY in Florida.

Civil Action No.: 04-12638-MLW

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 7th, 2005.

_____
RALPH NAVARRO, President
South Florida Yacht Sales, Inc.

{M2223474;2}

5

11/01/2001  17:59    9549277331                    SO FLA YACHT                              PAGE  02/02

850 N.E. 3rd Street                                                                    Office: 954-925-7117
Suite 207                                                                              Fax: 954-927-7331
Dania, Florida 33004                                                         email: sales@southfloridayachtsales.com
                                                                                       www.yachtworld.com
                                                                                       www.southfloridayachts.com



MILLENNIUM   •   OCEAN YACHTS   •   RIVIERA   •   BROKERAGE

| Vessel Information | | | |
|---|---|---|---|
| 2002 Ocean 56 Super Sport | | Purchaser: | Robert and Ann Raimondi |
| Twin 1050 Mans | | Address: | |
| | | Phone: | 617-265-0440 |
| | | Fax: | |
| | | Date: | 11/1/01 |

| OPTIONAL EQUIP. & ACC. | | BASE VESSEL PRICE | 1,244,900.00 |
|---|---|---|---|
| | | Dealer Prep | |
| Enclosed Bridge | $ 30,000.00 | Freight | |
| Trolling Valves | $ 4,000.00 | Full Fuel | |
| Remote Gauges | $ 1,450.00 | Interior/Décor | |
| Teak Coming | $ 3,000.00 | Designer Interior | NC |
| Electronic Panel (62) | | Electronics Carried Forward | |
| Access Door on Stairs | $ 425.00 | Optional Equipment Carried Fo | 49,348.00 |
| Companion Step & Runner | $ 500.00 | Options per Addendum "A" | |
| Under Counter Refrigerator/Freezer | $ 4,465.00 | Sub-Total | 1,294,248.00 |
| TV over Dinnette | $ 1,200.00 | Credits | -134,248.00 |
| Two teak doors in place of TV-Delete small door to right and install stereo to one side | $ 500.00 | Trade-In Allowance | -800,000.00 |
| Delete Mirror Forward | $ 100.00 | Total Sales Price | 360,000.00 |
| Delete Sink | $ (150.00) | Sales Tax | Exempt |
| Delete Blinds | $ (150.00) | Total Due | 360,000.00 |
| Forward Lewmar Hatch | $ 950.00 | Down Payment | -80,000.00 |
| Lewmar Windlass Comp't II | $ 3,450.00 | Unpaid Balance | 280,000.00 |
| Delete VOR | $ (100.00) | Additional Payment | |
| Delete Purma Pub | $ (292.00) | | |
| Eliminate All Brass Screen Door Hooks on Top of All Doors | NC | | |
| Eliminate 2nd Glendinning Cablemaster-Tie Electrical in | NC | | |
| Delete all Towel Racks and Cup Holders in Heads | | | |
| Install customer supplied Transducer | | | |
| Spotlight | NC | | |
| Subtotal | $ 49,348.00 | Unpaid Balance | 280,000.00 |

| DESCRIPTION OF TRADE-IN: | | |
|---|---|---|
| Trade-in debt to be free and clear of all liens. | | Purchaser hereby acknowledges receipt of a copy of this order and has read the back of this agreement. Purchaser also agrees that the balance will be paid by ___ cash ___ bank draft ___ certified check or by the execution of a ___ retail installment contract or a security agreement. |
| (Trade-in is subject to survey & all survey items will be repaired or paid for by client before closing) | | |
| Year   Size   HIN# | | Delivery & Closing will take place on or before APRIL 15, 2001 |
| 1998 48 Ocean Tw 660 Cats w/600 hrs | | BOAT TO PICKED UP AT OCEAN FACTORY, NJ |
| 1997 40 Ocean Tw Cats w/300 hrs | | Purchasers: R.M. Raimondi |
| Trade-in Vessel Allowance - TWO VESSELS | $ 800,000.00 | SIGNED: R.M. Raimondi |

FT.  LAUDERDALE       •       MIAMI       •       PALM BEACH

Title to the above note shall pass to the Buyer when payment for the equipment has been made in full. You and I understand that this agreement is subject to necessary corrections and adjustments concerning changes in the net payoff of my trade-in to be made at the time of settlement. You and I certify that the additional terms and conditions printed on the other side of this contract are agreed to as part of this agreement, the same as if printed above the signatures; I am of statutory age or have been legally emancipated. I certify that the optional equipment, accessories, and insurance, if any, has been voluntarily purchased by me. My trade-in is free from all liens or encumbrances whatsoever, except as I have indicated herein. You and I agree that if any paragraph or provision should violate the law and/or is unenforceable, the rest of the contract will remain valid.

In this contract the words I, me and My, refer to the Buyer and Co-Buyer signing this contract. The words you and your refer to South Florida Yachts.

I Further Agree

1. **If Not A Cash Transaction.** If this purchase is not a cash transaction, I will Before or At the time of Delivery of the boat purchased, in accordance with the terms and conditions on the other side of this contract, sign a retail installment contract, security agreement as may be required by law.

2. **Title.** Title to the boat purchased will remain in you until the agreed price is paid in full in cash, or I have signed a retail installment contract or security agreement and it has been accepted by the bank or finance company, at which time title passes to me even though the actual delivery of the unit purchased may be made at a later date.

3. **Reappraisal of Trade-In.** If I am making a trade-in and it is not delivered to you at the time of appraisal value will then determine the allowance to be made for my trade-in.

4. **Failure To Complete Purchase.** If I fail or refuse to complete this purchase within the time frame specified by the agreed upon terms of this contract or as specified in the Uniform Commercial Code of the state of your jurisdiction or within an agreed upon extension of time, for any reason (other than cancellation because of an increase in price), you may keep that portion of my cash deposit which will reimburse you for expenses and other losses because I failed to complete my purchase. If I have given you a trade-in, you may sell the trade-in, at public or private sale, and deduct from the money received an amount equal to the expenses and losses you have incurred because I failed to complete this purchase. I understand you shall have all the rights of a seller upon breach of contract, under the Uniform Commercial Code 2-708, 2-710, 2-718 of the Uniform Sales Act (as applicable). In the event legal action is brought by the dealer for the enforcement of the terms of this agreement or that the purchase agreement shall be referred to an attorney who takes action in any manner to enforce said agreement, purchaser agrees to pay reasonable attorney fees and court costs incurred by the dealer.

5. **Changes by Manufacturer.** I understand that the manufacturer may make any changes to the model, or the designs, or any accessories and parts from time to time, and at any time. If the manufacturer does make changes, neither you nor the manufacturer are obligated to make the same changes in the unit I am purchasing and covered by this order, either before or after it is delivered to me.

6. **Taxes.** I understand that the price of the boat I am purchasing does not include any tax or taxes imposed by any governmental agency or authority prior to or at the time of delivery unless it is written on the other side of this contract. I assume and agree to pay, unless prohibited by law, all taxes, except income taxes, that may be charged on my purchase, regardless of the person having the primary tax liability.

7. **Delays.** I will not hold you liable for delays caused by manufacturer, accident, strikes, fires or any other cause beyond your control.

8. **Exclusion of Warranties.** I Understand That The Implied Warranties Of Merchantability And Fitness For A Particular Purpose And All Other Warranties Express Or Implied Are Excluded By You From This Transaction And Shall Not Apply To Goods Sold. I Understand That You Make No Warranties Whatsoever Regarding The Boat Nor Any Appliances Or Components Contained Therein, Except As May Be Required Under Applicable State Law.

9. **Manufacturers Warranties.** I Understand That There May Be Written Warranties Covering The Boat Or Rig Purchased, Or Any Appliance(s) or Components. You Will Give Me Copies Of Any And All Written Warranties Supplied By Manufacturers.

10. **Inspection.** I have examined the boat and find it suitable for my particular needs. I have relied upon my own judgement and inspection in determining that it is of acceptable quality. On a special ordered craft, I have relied on my inspection of the display model(s), the brochures and bulletins provided by the manufacturer, in making my decision to purchase the craft described on the reverse side of this agreement.

11. **Insurance.** I understand that I am not covered by insurance on the boat purchased on the front of this contract and that is my responsibility to secure insurance. I will not hold you responsible for any claims due to loss or damage whatsoever.

12. **Trade-Ins.** If I am trading in a used boat, I agree and certify:
The trade-in will become your property on the date it is physically delivered to you. I will also deliver to you a certificate of title or registry showing the name of the sole owner, together with a proper bill of sale or other instrument(s) of transfer sufficient to convey the title to you; to your place of business.
If my Trade-in is registered or licensed in a state outside of the one where this order is written, I will immediately have the trade-in licensed and/or registered in the state you indicate and I will pay any and all expenses and registration, if requested to do so.
I Certify that this unit is solely owned by me and that there are no liens or claims against my boat or rig except for those noted on the other side of this contract, and that all taxes of every kind have been fully paid. In the event any government agency makes a levy or claims a tax lien or demand against my trade-in, you may, at your option, either pay it and I will reimburse you on demand, or you may add that amount to this contract.

13. **Brokered Boats.** I understand that all brokered and used boats are sold "as is" and that you make no warranty whatsoever unless in writing on the other side. I have examined the used boat and I am satisfied with its condition and the optional equipment and accessories included with it are in good working order.

14. **THE TERMS AND CONDITIONS ON BOTH SIDES OF THIS CONTRACT CONTAINS THE ENTIRE UNDERSTANDING BETWEEN YOU AND ME THAT NO OTHER REPRESENTATIVE OR INDUCEMENT, VERBAL OR WRITTEN, HAS BEEN MADE WHICH IS NOT INCLUDED IN THIS CONTRACT OF SALE.**

15. **Deposits.** Buyer authorizes South Florida Yachts, to transfer any deposit monies paid by buyer to the manufacturer.

SIGNED: _____[signature]_____    ✓
            BUYER (S)

SIGNED: _____    ✓
            BUYER (B)

http://www.floridayachtsinternational.com/



# Florida Yachts International

- NEW BOATS
- BROKERAGE
- HAPPENINGS
- CONTACT







<pre>
</pre>
<pre>
</pre>
<pre>
</pre>



**FYI**

F L O R I D A   Y A C H T S   I N T E R N A T I O N A L

Miami Office
2550 South Bayshore Drive Suite 7
Miami, Florida 33133

Office: (305) 854-6020
Toll Free: (888) 224-7132
Fax: (305) 854-5977

Email Miami: FYIMia-florida yachtsinternational.com
FYI Service: service-floridayachtsinternational.com
Kay Buckman: director-m-floridayachtsinternational.com

FYI - Staff | Miami | Ft. Lauderdale | West Palm Beach | Santo Domingo

NEW BOATS | BROKERAGE | HAPPENINGS | CONTACT US | HOME

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of March, 2005, I caused a true copy of the foregoing to be serve by facsimile and U.S. Mail upon counsel for the plaintiff in this action, Stuart T. Schrier, Esq., SHRIER & BALIN, P.C., 1011 Dorchester Avenue, Boston, MA 02125.

_____
Zoe Butler-Stark

{M2224567;1}