UNITED STATE DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-12638 MLW

```
=====================================
                              )
ROBERT RAIMONDI,              )
              Plaintiff       )
                              )
v.                            )
                              )
SOUTH FLORIDA YACHT           )
SALES, INC.,                  )
              Defendant       )
                              )
=====================================
```

**AFFIDAVIT OF ROBERT RAIMONDI**

I, Robert Raimondi, being duly sworn, do depose and state as follows:

1. I am the Plaintiff in this matter and I have personal knowledge of the matters set forth in this affidavit except those matters which are stated to be upon information and belief which I believe to be true based upon information provided to me by others.

2. I have reviewed South Florida Yacht Sales, Inc's (SFY) Motion to Dismiss, Declarations of Ralph Navarro and Thomas Troccolli, Jr. and the Memorandum of Law in Support of the Motion to Dismiss the Complaint.

3. I am an adult male resident of Massachusetts.

4. I have resided in Massachusetts for my entire life. I am sixty-six years of age. I have never resided in Florida.

5.  In 1999 I saw a magazine advertisement for South Florida Yacht Sales and I went to Dania, Florida.

6.  I met a salesman, John Lebevero, who sold me a leftover 1999 48 foot Ocean Yacht for $600,000.00. I purchased that boat on March 14, 2000.

7.  South Florida Yacht Sales arranged to ship that boat from Florida to Massachusetts.

8.  Due to bad weather, the boat was brought from Florida to Atlantic City, New Jersey where I picked it up.

9.  In October, 2001 I went to the Ft. Lauderdale International Boat Show in Fort Lauderdale, Florida.

10. At that time I agreed to purchase a 56 foot Ocean Yacht from South Florida Yacht Sales for $1,244,900.00 .

11. At the time I agreed to purchase the 56 foot Ocean Yacht I had two boats to trade.

12. I traded a 1997 40 foot Ocean Yacht and a 1999 48 foot Ocean Yacht as part of the purchase of the 2002 56 foot Ocean Yacht.

13. At the time I traded the 1997 40 foot Ocean Yacht, it was docked at Zecco's Marina in Wareham, Massachusetts.

14. SFY purchased the boat from me in Massachusetts, and they arranged for a captain to pick up the boat and transport it to Florida.

15. At the time I traded the 1999 48 foot Ocean Yacht, it was also docked at Zecco's Marina in Wareham, Massachusetts.

16. SFY purchased the 1999 48 foot Ocean Yacht in Massachusetts. They kept the boat at Zecco's Marina in Wareham for a period of time while they attempted to sell the boat.

17. On information and belief, Thomas Troccolli arranged to sell the 48 foot Ocean Yacht for about $530,000.00 to a customer in Connecticut. I am informed that an affiliate of Oyster Harbor Marine used boat division may have brokered the sale. Oyster Harbor Marine is a Massachusetts Boat Broker located in Hyannis, Massachusetts.

18. On information and belief SFY has had numerous other transactions with customers in Massachusetts.

   a. On or about 2002, SFY sold a 1995 Ocean Yacht to Daniel Evans, Sr. of Manchester Street, Brockton, Massachusetts.

   b. On or about 1999, SFY sold a 48 foot Ocean Yacht to Al Ryalls (Rawls) of 24 Alder Road, Plymouth.

   c. On or about 2002-2003, SFY sold a 2004 52 foot Ocean Yacht to Al Ryalls (Rawls) of 24 Alder Road, Plymouth, Massachusetts.

   d. On or about 2004 SFY sold a 2004 56 foot Ocean Yacht to Jeff O'Bickinski of Massachusetts. Mr. O'Bickinski resides in Massachusetts.

19. At the time I agreed to purchase the 56 foot Ocean Yacht, the purchase price was 1,244,900.00 plus optional equipment in the amount of $49,348.00. The Total purchase price was 1,294,248.00. I was given credits in the amount of $134,248.00 which was a discount off the list price. The Net purchase price was $1,160,000.00.

20. I made seven payments by check and wire transfer to SFY totaling $1,152,281.96.

21. I was to receive a trade in allowance of $800,000.00 for the two trade-ins which were the 1997 40 foot Ocean Yacht and the 1999 48 foot Ocean Yacht. From those trade in allowances, I had to pay off my existing loans on the trade-ins.

22. The payoff on the 40 foot Ocean Yacht was $226,146.96, and the payoff on the 48 foot Ocean Yacht was $465,350.00.

23. As a result of these payoffs I should have receive a net trade-in allowance of $108,503.04.

24. In 2003, I had called and left messages trying to discuss the overpayment with SFY.

25. I had received no response so I had my accountant send them a letter.

26. On February 11, 2004, I had my accountant write to Mr. Navarro and Mr. Troccolli to inform them of the overpayment.  *EX 1, 2, 3*

27. On February 12, 2004 Ralph Navarro, replied to my accountant that he would retrieve the file and review the account.  *EX 4*

28. There were numerous other communications with Mr. Navarro and he had agreed to explain to us his version of the accounting.

29. On May 7, 2004 Mr. Navarro sent a letter to my attorney, in which he simply stated that he reviewed the records and interviewed the broker and he believed that the amount paid was correct.  *EX 5*

30. I learned that Mr. Navarro was stating that the trade-ins were not worth the full $800,000.00 when I read paragraph 13 of the Declaration of Ralph Navarro. He had first made that allegation in his letter of May 7, 2004 but he did not state what the trades were worth.

31. SFY had agreed to come to Massachusetts to survey the trade-ins and move them to Florida.

32. SFY had agreed that if both trade-ins were sold prior to their arrival in Massachusetts to survey and remove the boats that they would give an additional 2% trade-in allowance.

33. The agreement between South Florida Yachts and myself was that if I was able to arrange a sale of the trade-ins sold for more than $540,000 for the 48 foot Ocean and more than $260,000 for the 40 foot Ocean, I would get to keep any excess.

34. There were no provisions in the agreement for any reduction in the trade-in value.

35. There was no amendment to the sales agreement due to the trade-ins.

Signed at Boston this the 8th day of April, 2005 under the pains and penalties of perjury.

*[signature]*

**Robert Raimondi**
219 Gardiner Road
Quincy, Massachusetts 02169

Ex 1

Robert F. Alcarez
Certified Public Accountant
54 Dover Street, Whitman, MA 02382-1923
617-771-1332

February 11, 2004

Mr. Ralph Navarro  
South Florida Yachts / Florida Yachts Inter'l  
2550 South Bay Shore Drive, Suite 2  
Miami, FL 33133

Mr. Thomas Troccolli  
South Florida Yachts / Florida Yachts International  
101 North Riverside, Suite 207  
Pompano Beach, FL 33062

Attention: Ralph Navarro and Troccolli:

The purpose of this letter is to serve you notice that there has been a $100,000.00 over payment by Robert and Anne Raimondi on the purchase of their 56 Ocean hull # XYU05556C202S which occurred about April 2001. I have been engaged to review the purchase transactions and payments. Based on the information provided, in my opinion there is an overpayment of $100,000.

You will find enclosed a summary schedule, which shows the transactions. Supporting documentation is also enclosed for your review

The Raimondi's are hereby requesting that you respond within 7 days of receiving this letter, so they can assume that your timely response will suggest this *One Hundred Thousand Dollar Overpayment* was an accounting oversight on your part. If you decline to response within the 7 days then they may proceed to collect under the Consumer Protection Act.

This letter will give you the opportunity to make a settlement of the over payment including interest prior to my seeking damages- including interest and attorney's fees against you in a lawsuit that protects consumers.

Please note, however, that nothing in the law requires them to wait before bringing a lawsuit against you raising statutory and common law causes of action including but not limited to breach of contract and specific performance.

Naturally, if you have any questions concerning this request, please do not hesitate to contact me at the above phone number.

Sincerely,

Robert Alcarez

cc:     Attorney Stuart Schrier

        Mr. Douglas Finney  
        Vice President of Sales and Marketing  
        Ocean Yachts, Inc  
        P.O. Box 312  
        Egg Harbor City, NJ 08215

Robert and Ann Raimondi
South Florida Yachts
**Summary schedule accounting for purchase and payments of a 2002 Ocean 56 Super Sport**

| Amount Due for purchase of boat | |
|---|---:|
| Base vessel price | 1,244,900.00 |
| Optional Equipment | 49,348.00 |
| Sub-total | 1,294,248.00 |
| Credits | (134,248.00) |
| Trade in allowance | (800,000.00) |
| Total sales price | 360,000.00 |
| Payoff loan on 48 Ocean Trade-in | 465,350.00 |
| Payoff loan on 40 Ocean Trade-in | 226,146.96 |
|  | 1,051,496.96 |
| Added optional equipment | 785.00 |
| **Total Amount Due** | **1,052,281.96** |

| Payments to South Florida Yachts | | | | |
|---|---:|---|---|---|
| Amount | | Date | Check # | Source |
| | 80,000.00 | 10/31/01 | wire-in | Random Financial |
| | 100,000.00 | 3/13/02 | 1257 | Personal account |
| | 100,000.00 | 4/1/02 | 2044 | Random Financial |
| | 150,000.00 | 4/3/02 | 2048 | Random Financial |
| | 22,281.96 | 4/3/02 | 1296 | Personal account |
| | 200,000.00 | 4/9/02 | 2051 | Random Financial |
| 652,281.96 | subtotal | | | |
| 500,000.00 | wire | | | Citizens Bank |
| 1,152,281.96 | Total payments | | | |
| (1,052,281.96) | | | | |
| **100,000.00** | **Over payment** | | | down payment as listed on purchase agreement |

Ex 3

| Breakdown | | Pmt | Pmt Date | Amount | | Account Balance | |
|---|---|---|---|---|---|---|---|
| Base Price | | | | | | $ | 1,244,900.00 |
| Options | $ | 49,348.00 | | | | $ | 1,294,248.00 |
| Credit | $ | (134,248.00) | | | | $ | 1,160,000.00 |
| Trade-In | $ | (800,000.00) | | | | $ | 360,000.00 |
| Loan Payoff (48) | $ | 465,350.00 | | | | $ | 825,350.00 |
| Loan Payoff (40) | $ | 226,146.96 | | | | $ | 1,051,496.96 |
| Options | $ | 785.00 | | | | $ | 1,052,281.96 |
| | | Wire | 11/5/2001 | $ | (80,000.00) | $ | 972,281.96 |
| | | # 1257 | 3/13/2002 | $ | (100,000.00) | $ | 872,281.96 |
| | | # 2044 | 4/1/2002 | $ | (100,000.00) | $ | 772,281.96 |
| | | # 1296 | 4/3/2002 | $ | (22,281.96) | $ | 750,000.00 |
| | | # 2051 | 4/9/2002 | $ | (200,000.00) | $ | 550,000.00 |
| | | # 2048 | 4/12/2004 | $ | (150,000.00) | $ | 400,000.00 |
| | | Wire | 4/16/2002 | $ | (500,000.00) | $ | (100,000.00) |

**Miami Office**
2550 South Bayshore Drive, Ste. 2
Miami, FL 33133
Phone# (305) 854-6020
Fax#    (305) 854-5177
WWW.FloridaYachtsInternational.com

805-796-3893 cell



**Ft. Lauderdale Office**
101 North Riverside Drive, Ste. 207
Pompano, FL 33062
Phone# (954) 925-7117
Fax#    (954) 927-7331

EX 4

February 12, 2004

Mr. Robert F. Alcarez
Certified Public Accountant
54 Dover Street
Whitman, MA 02382-1332

Dear Mr. Alcarez:

I am in receipt of your letter dated February 11, 2004 regarding the 56' Ocean Hull # XYUC5556C202S. The files being requested are in archives. We will request and review our files as promptly as possible. Although, in my recollection of this transaction, there was no overpayment.

I will respond as soon as I have my records retrieved and I review them.

Very sincerely yours,

Ralph Navarro, President
Florida Yachts International

CC: Mr. Doug Finney

RN/bcn



**FLORIDA YACHTS INTERNATIONAL**
NEW BOATS ● BROKERAGE ● CONSULTATION ● NEW CONSTRUCTION

Ex 5

May 7, 2004

Schrier & Balin, P.C.
Attorney's At Law
101 Dorchester Avenue
Boston, Massachusetts 02135

Dear Mr. Schrier:

Please accept our sincere apology for not responding to you sooner. Since this is a very delicate matter involving such a large amount, we had to review all of our records and interview with the selling broker in this transaction so that we could asses your claim properly. In review of the records that you have provided, we are in agreement with the cash amount received from your client.

However, after careful interviews with the selling broker and the amended purchase and sale agreement faxed to us from R & R on November 5th 2001, it clearly establishes the new sales price due to the trades that were hand delivered to Mr. Raimondi at closing. Mr. Raimondi was in a rush due to the unfortunate tragedy of his brother's death. Mr. Raimondi left the closing and then faxed the attached purchase agreement to our Fort Lauderdale office.

Once again, I extend my apologies for the delay. My intent was only to make sure that we had the right information.

Very Sincerely,

Ralph Navarro, President
Florida Yachts International

RN/bru
Enclosures (1)
Sent via fax and
Certified Mail

2550 South Bayshore Drive • Miami • FL • 33133 • Office: 305-854-6020 • Fax: 305-854-5177
www.southfloridayachtsales.com