UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
----------------------------------------------)
ROBERT RAIMONDI                               )
                                              )
           Plaintiff,                         )
                                              )   Civil Action No. 04-cv-12638-LTS
v.                                            )
                                              )
SOUTH FLORIDA YACHT                           )
SALES, INC.                                   )
                                              )
           Defendant.                         )
----------------------------------------------)
```

### MEMORANDUM AND ORDER ON MOTION TO DISMISS (Docket #6)

SOROKIN, M.J.

Defendant has filed a Motion to Dismiss the Complaint (hereinafter "defendant's Motion" or "Def. Mtn.") for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). For the reasons set forth below the Motion is ALLOWED.

### FACTS

The following facts are taken from the documents and affidavits submitted by the parties. The facts in this case are undisputed unless otherwise noted. Although the Court views the facts in the light most favorable to the non-moving plaintiff, Boit v. Gar-Tec Products, 967 F.2d 671, 675 (1st Cir. 1992), the plaintiff must show specific facts rather than mere general conclusory assertions establishing jurisdiction. Ticketmaster- N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994).

The plaintiff Robert Raimondi is a lifetime resident of Massachusetts. Affidavit of Robert

Raimondi ¶ 4 (hereinafter "Pl. Aff."). Plaintiff has never been a resident of Florida. Id.

Defendant South Florida Yacht Sales, Inc. is a corporation located in Florida. It was created in 2001. Declaration of Ralph Navarro ¶ 8 (hereinafter "Decl. Navarro"). Defendant is in the business of selling yachts. Id. ¶ 4. Defendant specifically sells yachts made by Ocean Yachts, Inc., serving the market between Deerfield Beach, Florida and Key West, Florida. Id. Defendant also has an office in Santo Domingo, Dominican Republic. Id. ¶ 3.

Defendant does not engage in activities intended to serve the market for yacht sales in Massachusetts. Decl. Navarro ¶ 5. It does not have any offices, agents, sales representatives, inventory or real property located in Massachusetts. Id. ¶ 3. Defendant does not solicit business in, direct marketing to, or advertise in Massachusetts. Id. ¶ 6. Although it maintains a website containing information about its products, yachts cannot be purchased via the website. Id. ¶ 7.

Plaintiff was in Florida in late 2001. While in Florida, he attended a boat show in Fort Lauderdale. Pl. Aff. ¶ 9. There is no evidence that plaintiff's attendance at the boat show was solicited by the defendant in any way. Defendant was present at the boat show through its sales representative, Thomas Troccoli, and its president, Ralph Navarro. Decl. Navarro ¶ 8. While at the boat show in Florida, plaintiff met with defendant's sales representative and agreed to purchase a new, 2002 fifty-six foot Ocean Yacht through the defendant. Pl. Aff. ¶ 10.

At the boat show, the purchase agreement between plaintiff and defendant was reduced to a two page written contract. Decl. Navarro ¶ 8. Plaintiff's signature appears upon the signature line of both pages of the contract. Def. Mtn. Ex. B 1-2 (hereinafter "Contract"). The purchase price for the new yacht was $1,244,900.00. Pl. Aff. ¶ 10. The contract provided for defendant to accept in trade two smaller vessels owned by the plaintiff: a 1997 forty foot Ocean Yacht, and a

1999 forty-eight foot Ocean Yacht. Pl. Aff. ¶ 12. At the time of the boat show, the two trade-in yachts were located within Massachusetts, although that fact is not noted in the contract. Pl. Aff. ¶¶ 13, 15. The plaintiff provided the defendant with general representations about the condition of his two boats. Decl. Navarro ¶ 10. The representations included the year, make, model and hours of usage of both vessels. Contract at 1. The information provided by plaintiff regarding his trade-ins was itemized on the first page of the contract under the heading "Description of Trade-In." Id. Immediately beneath that heading appeared the language:

> Trade-in debt to be free and clear of all liens.
> (Trade-in is subject to survey & all survey items will be
>  repaired or paid for by client before closing)

Id.

Based upon plaintiff's representations made at the boat show in Florida, the defendant estimated the values of both boats, then offered the plaintiff a combined "trade-in vessel allowance" of $800,000.00. Decl. Navarro ¶ 10. Each of the two trade-in vessels had outstanding liens totaling approximately $691,000. Pl. Aff. ¶ 21. In accordance with paragraph twelve of the contract, plaintiff agreed that once all liens on both vessels were clear, plaintiff would turn over both titles and bills of sale to the defendant in Florida. Second Declaration of Ralph Navarro ¶ 17 (hereinafter "2nd Decl. Navarro"). Defendant would then take possession of both yachts. Id. The contract itself does not explicitly state when, where or how defendant agreed to take possession, but plaintiff states that when the contract was formed defendant "agreed to come to Masschusetts to survey the trade-ins and move them to Florida." Pl. Aff. ¶ 31. There is no further evidence as to where the surveys actually occurred.

While at the boat show, the plaintiff wired an $80,000.00 down payment from his bank

3

account to the defendant's bank account in Florida. Decl. Navarro ¶ 12.  Plaintiff does not state the geographic location of the bank from whence this down payment emanated, although the Court infers the source was Massachusetts.

The new fifty-six foot yacht was not built as of the date of the boat show. Decl. Navarro ¶ 14.  Thus, plaintiff and defendant agreed that closing upon and delivery of the yacht would take place roughly six months hence, on or about April 15th, 2002, at the Ocean Yachts factory in New Jersey. Id.  After wiring the down payment at the boat show, plaintiff agreed to make installment payments towards the purchase price in the intervening months, with the balance due by the closing. Id. ¶ 12.  Between late 2001 and mid-April, 2002, plaintiff sent five checks, drawn on his bank accounts, to the defendant in Florida. Pl. Opp. Mtn. Ex. 2, 3.  Defendant received the five checks from the plaintiff and deposited them in its Miami, Florida bank account. Decl. Navarro ¶ 12.  Plaintiff does not state the location of the bank account from whence these five checks emanated, although again, the Court infers Massachusetts was the source.

In the months before the closing and delivery of the new yacht, the defendant, from Florida, hired two agents to enter Massachusetts to take possession of the two trade-in boats. 2nd Decl. Navarro ¶¶ 10, 11.  Defendant sent a New Jersey based captain to Massachusetts to pick up the forty foot boat and drive it to Florida. Id. ¶ 10.  Defendant also hired a yacht broker to sell the forty-eight foot boat, which was located at a marina in Massachusetts. Id. ¶ 11.  Plaintiff states, based upon his information and belief, that this boat was sold in Connecticut through a Massachusetts based yacht broker. Pl. Aff. ¶ 17.  Defendant states, based upon personal knowledge, that it used Alpha Yachts, a Maine based yacht broker, to sell the forty-eight foot boat. 2nd Decl. Navarro ¶ 11.

As the closing date neared, defendant notified plaintiff that the outstanding balance on the yacht was $500,000.00, due prior to the closing. Complaint ¶ 15. Plaintiff wired $500,000.00 from his Citizens Bank account to the defendant's bank account in Florida prior to the closing. Id. ¶ 16. Plaintiff does not state where his Citizens Bank account was located, although the Court infers that the funds came from Massachusetts. On or about April 24th, 2002, plaintiff closed upon and took possession of his new fifty-six foot yacht at the Ocean Yachts factory in New Jersey. Decl. Navarro ¶ 14.

At some point in time after delivery of his new yacht, plaintiff claims he discovered that the defendant's final request for $500,000.00 resulted in an overpayment of his balance by approximately $100,000.00. Complaint ¶¶ 16, 18. In February, 2004, plaintiff's Massachusetts based accountant wrote a letter to the defendant in Florida identifying the putative error and requesting return of the $100,000.00 from defendant. Pl. Opp. Mtn. Ex. 1. In February, 2004, defendant, from Florida, wrote a letter to plaintiff's accountant in Massachusetts, stating that defendant would review their files regarding the alleged overpayment. Pl. Opp. Mtn. Ex. 4. On May 7th, 2004, defendant, from Florida, wrote a letter to the plaintiff's attorney in Massachusetts, stating that the final request for $500,000.00 was not in error, but instead correctly reflected the balance due based upon a reduction in the trade-in allowance from $800,000 to $700,000. Pl. Opp. Mtn. Ex. 5.

The fundamental conflict herein stems from plaintiff's belief that "[t]here were no provisions in the agreement for any reduction in the trade-in value." Pl. Aff. ¶ 34. Plaintiff states that he first learned that defendant had reduced the value of his trade-ins through the letter defendant sent to plaintiff's attorney on May 7th, 2004. Pl. Aff. ¶ 30. Defendant counters that its

5

$800,000.00 trade-in allowance was merely an initial estimate based upon the plaintiff's oral representations at the boat show, and that their actual trade-in value was, by terms of the contract, conditional upon physical survey of the boats. Decl. Navarro ¶ 10. Neither party states where the surveys actually occurred, but defendant states that after its surveys, the trade-ins were found to be worth only $700,000.00. Id. ¶ 13. Defendant further states that, in accordance with the terms of the contract, its final request for $500,000.00 from the plaintiff reflected the correct balance due, adjusted because of the decreased trade-in allowance. Id. Defendant also asserts that it notified plaintiff of the decreased trade-in allowance prior to the closing. Id. ¶ 13. Both parties agree upon the timing and amount of the payments plaintiff made.

On December 16th, 2004, plaintiff filed this lawsuit. He makes three claims: recovery for overpayment of a balance due, money had and received, and a violation of consumer protection laws under M. G. L. § 93A. Defendant has moved to dismiss the complaint for lack of personal jurisdiction.

## DISCUSSION

> The proper exercise of specific *in personam* jurisdiction hinges on satisfaction of two requirements: first, that the forum in which the federal district court sits has a long-arm statute that purports to grant jurisdiction over the defendant; and second, that the exercise of jurisdiction pursuant to that statute comports with the strictures of the [Due Process Clause of the] Constitution.

Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994).

Massachusetts has a long-arm statute: M. G. L. c. 223A. Plaintiff asserts jurisdiction only under M. G. L. c. 223A § 3(a), which allows that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising

from the person's (a) transacting any business in this commonwealth; . . ." Plaintiff's Opposition to Motion to Dismiss at 6. The most incidental of purposeful contacts will satisfy the transacting business requirement of section 3(a). See Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112-13 (1st Cir. 1997) (reciting numerous First Circuit cases setting broadly inclusive standard of "transacting business").

Defendant's agents entered Massachusetts to take possession of the two trade-ins. A defendant's agent's actions "may be attributed to the principal, for purposes of personal jurisdiction, if the principal later ratifies the agent's conduct." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 55 (1st Cir. 2002). Even assuming that the defendant's agents' actions in taking possession of the trade-ins satisfied the bare requirements of transacting business under the Massachusetts long-arm statute, plaintiff has other hurdles to overcome.

Under the Massachusetts long-arm statute, a plaintiff must also show that the cause of action "arises out of" the in-state business transaction. Lyle, 132 F.3d at 112. This language precisely tracks the personal jurisdiction strictures of the Due Process Clause. "Massachusetts courts construe section 3(a)'s 'transacting business' requisite as extending jurisdiction as far as permitted by the due process clause of the Fourteenth Amendment." Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik, 295 F.3d 59, 63 (1st Cir. 2002). Thus, the analysis of the requirements under the long-arm statute and the Due Process Clause is identical.

The question under the Constitution's Due Process Clause is whether defendant's actions within Massachusetts comprised "minimum contacts" sufficient to assert personal jurisdiction over the Florida based defendant without offense to "traditional notions of fair play and

substantial justice . . . " Int'l. Shoe Co. v.Washington, 326 U.S. 310, 316 (1945) (citation omitted). The burden of showing that the exercise of personal jurisdiction is proper rests with the plaintiff. U.S.S. Yachts v. Ocean Yachts, Inc., 894 F.2d 9, 11 (1st Cir. 1990). The plaintiff must make a prima facie showing of jurisdiction supported by specific facts alleged in the pleadings, affidavits, and exhibits. Ealing Corp. v. Harrods Ltd, 790 F.2d 978, 979 (1st Cir. 1986). Mere reliance on the allegations of the pleadings is not enough. Chlebda v. H.E. Fortna & Brother, Inc., 609 F.2d 1022, 1024 (1st Cir. 1979). Under the prima facie test "a district court does not act as a factfinder; to the contrary, it ascertains only whether the facts duly proffered, fully credited, support the exercise of personal jurisdiction." Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 84 (1st Cir. 1997).

To survive a Due Process challenge to specific personal jurisdiction, plaintiff must satisfy each of three prongs. First, he must show the relatedness of the defendant's conduct in Massachusetts to his cause of action: that his complaint "directly relates to or arises out of defendant's contacts with the forum." Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999). Second, plaintiff must show the defendant's "purposeful availment of the benefits and protections afforded by the forum's laws." Id. Third, only after satisfaction of the first two prongs, plaintiff must show that asserting jurisdiction would be reasonable and fair in light of five criteria, dubbed the "Gestalt factors." Id.

    1. The Claims Do Not Arise Out of Forum Contacts.

"[T]he relatedness test is, relatively speaking, a flexible, relaxed standard." Pritzker, 42 F.3d at 61. However, "[t]he relatedness requirement is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly

arise out of the specific contacts between the defendant and the forum state." <u>Sawtelle v. Farrell</u>, 70 F.3d 1381, 1389 (1st Cir. 1995). Plaintiff's claims fail this test.

In essence, the parties dispute the terms of and performance under their contract, specifically whether defendant had the right to reduce the trade-in allowance from $800,000 to $700,000. The affidavit from plaintiff makes this point plain when he asserts: "[t]here were no provisions in the <u>agreement</u> for any reduction in the trade-in value." Pl. Aff. ¶ 34 (emphasis added). Importantly, the contract's negotiation and performance occurred almost exclusively outside of Massachusetts: the parties met in Florida; they negotiated and executed the contract in Florida; plaintiff made all of his payments to defendant in Florida; defendant took title in Florida to the trade-ins; the parties performed the closing in New Jersey; and defendant delivered the new boat to plaintiff in New Jersey. Defendant performed one action in Massachusetts – it took possession of the trade-ins here. But, the parties' dispute does not arise out of this incidental contact, rather plaintiff's claim arises completely out of activities outside of the forum, i.e. the formation, execution and implementation of the terms of the contract. In evaluating whether a cause of action arises out of the performance of a contract, courts must examine whether "the defendant's forum-based activities [were] 'instrumental in the formation of the contract,' . . ." <u>Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n</u>, 142 F.3d 26, 35 (1st Cir. 1998) (citing <u>Hahn v. Vermont Law School</u>, 698 F.2d 48, 51 (1st Cir. 1983)). Plaintiff has not shown that any activity by defendant within Massachusetts was material to the contract's formation. To the contrary, all of the contract formation activity occurred in Florida. Thus, plaintiff's claim does not arise out of the defendant's activities within Massachusetts. See <u>Mcgee v. International Life Insurance Co.</u>, 355 U.S. 220, 223 (1957) (granting personal jurisdiction

when defendant company had sold one insurance policy within the forum state, and the cause of action arose out of dispute over terms of the policy).

Recognizing the difficulties of his position, plaintiff makes a creative effort to cast his claim in terms of the Massachusetts conduct in stating:

> [Plaintiff's] claim is that after the initial overpayment [defendant] concocted a story about the trade-ins being less than previously agreed. Since the trade-ins were located in Massachusetts the injury occurred in Massachusetts when [defendant] falsely claimed the trade-ins were not worth $800,000.00 as agreed and took $100,000.00 from [plaintiff] by reducing the trade-in allowance.

Pl. Opp. Mtn. 8.

Insofar as defendant's trade-in argument is "concocted," plaintiff is acknowledging that plaintiff's claim is simply that he was overcharged under the contract negotiated and executed in Florida.[1] For that contract claim, there is no jurisdiction in Massachusetts. Insofar as the dispute concerns the trade-in allowance under the contract, defendant's representations regarding the value of the trade-ins were made at the signing of the contract in Florida, from its offices in Florida prior to the closing, and at the closing in New Jersey; i.e. the dispute arises out of the terms of and performance under the contract. The injury occurred in Massachusetts only in the sense that plaintiff lives in Massachusetts and, therefore, any financial injury he incurred injured him in Massachusetts.

Three further points require mention. First, plaintiff "does not argue that long distance

---

[1] Plaintiff specifically alleges unfair and deceptive business practices by the defendant. Complaint ¶ 25. Plaintiff's use of the adjectives "deceptive" and "concocted" resonate in tort law more than in contract. However, he claims jurisdiction solely under M. G. L. 223A § 3(a), not under § 3(c) regarding tortious conduct. In any event, he fails to identify any tortious act in Massachusetts. Cf. Ealing, 790 F.2d at 979.

communication, mail or magazine advertisements bring someone under the jurisdiction of Massachusetts." Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint at 7.  Therefore, neither defendant's website nor any letters it sent to plaintiff in Massachusetts bear on the jurisdictional issue. See, e.g., Droukas v. Divers Training Academy, Inc., 376 N.E.2d 548, 551 (Mass. 1978) (rejecting personal jurisdiction over Florida corporation that advertised in publication distributed in Massachusetts and shipped to Massachusetts a product ordered by a Massachusetts resident from the advertisement).  Second, plaintiff asserts he purchased, in Florida, his forty-eight foot boat from the defendant.  Even if true, plaintiff has not identified any jurisdictional significance to this fact.  Third, plaintiff asserts, on information and belief, that defendant has sold boats to four other residents of Massachusetts.  Defendant, under oath, specifically disputes two of the sales and states, with particularity, that it sold and delivered the other two boats in Florida. 2nd Decl. Navarro ¶¶ 12-15.  In any event, doing business with Massachusetts residents by selling to them in Florida does not confer jurisdiction upon this Court.

    2. Defendant Did Not Purposefully Avail Itself of Massachusetts.

Purposeful availment requires that the Court look at "the nature of the [defendant's] contacts" with Massachusetts and "the degree to which they represent a purposeful availment of the forum's protections and benefits." Pritzker, 42 F.3d at 62.  The two cornerstones of purposeful availment are "voluntariness and foreseeability." Nowak v. Tak How Investments, Ltd., 94 F.3d 708 (1st Cir. 1996).

Defendant operates out of Florida.  It does not solicit business here.  It negotiated and executed a contract with the plaintiff only after he initiated contact with the defendant in Florida.

11

Plaintiff agreed to the terms of the contract. It required plaintiff to direct his payments to Florida. It required plaintiff to transfer legal title to the trade-ins in Florida. It required the closing to occur in New Jersey at the manufacturer's factory. Merely by taking physical possession of the trade-in boats in Massachusetts (in the form of sending agents to Massachusetts) defendant should not have "reasonably anticipate[d] being haled into court" here in a dispute arising out of its contract with the plaintiff. Worldwide Volkswagen v. Woodson, 444 U.S. 286, 297 (1980).

    3.  The Gestalt Factors Favor Dismissal.

"Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable." United Elec., Radio and Mach. Workers of America v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992). The Gestalt factors include "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." Id. at 1088. "These gestalt factors are designed to put into sharper perspective the reasonableness and fundamental fairness of exercising jurisdiction in particular situations. Ticketmaster- N.Y., Inc., 26 F.3d at 210. They "are not ends in themselves, but they are, collectively, a means of assisting courts in achieving substantial justice. In very close cases, they may tip the constitutional balance." Id. at 209 (citation omitted).

No showing has been made that any particular burden arises from requiring the plaintiff, the purchaser of a million dollar boat, to litigate his claims in Florida when he initiated, negotiated and executed the purchase contract in person in Florida, sent his payments to Florida and took delivery of the boat in New Jersey. Florida certainly has a substantial interest in

adjudicating this contractual dispute. And, requiring plaintiff to sue in Florida will not prevent him from obtaining effective relief.

## CONCLUSION

For all of the foregoing reasons, the defendant's Motion to Dismiss the Complaint pursuant to F. R. Civ. P 12(b)(2) is hereby ALLOWED.

/s/ LEO T. SOROKIN
Leo T. Sorokin
United States Magistrate Judge

Date: October 19, 2005